402 So.2d 690 (1981)
STATE of Louisiana In the Interest Of Kenneth BANKS.
No. 81-K-0712.
Supreme Court of Louisiana.
July 2, 1981.
Rehearing Denied September 4, 1981.
Concurring Opinion September 9, 1981.
*691 Frank J. Saia, Baton Rouge, Kathleen Stewart Richey, Asst. Public Defender, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Tyronne Gibbs, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiffs-respondents.
DIXON, Chief Justice.
Kenneth Banks was adjudicated delinquent because of an aggravated battery, R.S. 14:34, he had committed when he was sixteen. Banks struck another boy in the face with a two by four breaking the victim's upper and lower jaw bones. At the dispositional hearing held January 14, 1981 the juvenile judge ordered that Banks be committed to the Department of Corrections until January 24, 1982, his eighteenth birthday.
Defense counsel orally entered a motion for appeal. Additionally, she moved for suspension of the effect of the judgment of disposition and for the setting of bond pending appeal. The juvenile judge denied these motions, apparently relying upon the discretion vested in him by C.J.P. 103, which provides:
"The effect of a judgment of disposition shall not be suspended by an appeal unless the trial court or the court of appeal directs otherwise."
Banks then sought relief from the First Circuit on the theory that La.Const. art. I, § §18 guarantees juveniles bail pending appeal of their juvenile delinquency adjudication. The First Circuit found that section to be inapplicable to juvenile delinquency adjudications because of art. V, § 19 which directs the legislature to enact special juvenile procedures on "[t]he determination of guilt or innocence, the detention, and the custody of a person who is alleged to have committed a crime prior to his seventeenth birthday ..." (Emphasis added). The Court of Appeal reasoned that art. V, § 19, a special provision for juveniles, controls over art. I, § 18, which is general in nature. The First Circuit found C.J.P. 103 to be a permissible legislative response to the constitutional mandate of art. V, § 19. Therefore, the juvenile judge's action taken pursuant to that statute was affirmed. State in the Interest of Banks, (La.App. 1st Cir. 1981). This court granted writs to assess the juvenile's contention that his state and federal constitutional rights have been violated by the juvenile judge's action. State in the Interest of Banks, 397 So.2d 800 (La. 1981).

THE STATE CLAIMS
Banks maintains that the 1921 Constitution guaranteed bail to juveniles and that the redactors of the 1974 Constitution incorporated this right into art. I, § 18 which provides:
"Excessive bail shall not be required. Before and during a trial, a person shall be bailable by sufficient surety, except when he is charged with a capital offense and the proof is evident and the presumption of guilt is great. After conviction and before sentencing, a person shall be bailable if the maximum sentence which may be imposed is imprisonment for five years or less; and the judge may grant bail if the maximum sentence which may be imposed is imprisonment exceeding five years. After sentencing and until final judgment, a person shall be bailable if the sentence actually imposed is five years or less; and the judge may grant bail if the sentence actually imposed exceeds imprisonment for five years."
The primary support for relator's statement regarding the 1921 Constitution is drawn from State v. Franklin, 202 La. 439, 12 So.2d 211 (1943), in which it was held that the 1921 Constitution guarantees to juveniles the right to bail pending their juvenile delinquency adjudications. When that case is read in isolation, it does tend to support the conclusion that the 1921 Constitution intended to accord juveniles bail. *692 Nonetheless, the constitutional provisions were silent on the issue, and the jurisprudence interpreting these provisions, when read as a whole, do not provide consistent support for relator's proposition.
The bail provision of the 1921 Constitution, La.Const. of 1921, art. I, § 12, is very similar to the bail provision of the current constitution, La.Const. art. I, § 18. Neither constitutional provision expressly denies juveniles the right to bail, yet each provision is couched in language indicating that it is intended to apply only to criminal prosecutions.
The juvenile provisions of the 1921 Constitution differ significantly from the current constitution's juvenile provisions. The prior constitution, in addition to providing more detail, distinguished between juvenile procedures applicable to Orleans Parish, La. Const, of 1921, art. VII, §§ 95-96, and those applicable to the other parishes in the state, La.Const. of 1921, art. VII, §§ 52-54.

The 1921 Constitution
The cases addressing the issue of the juvenile's right to bail under the 1921 Constitution should be separated into those cases dealing with the juvenile's right to bail pending the delinquency adjudication, and those cases addressing the issue of the juvenile's right to bail pending appeal of the delinquency determination.

Bail Pending Adjudication
As previously mentioned, Banks relies upon the case of State v. Franklin, supra, as establishing that the 1921 Constitution afforded juveniles the right to bail. That case involved the issue of the juvenile's right to bail pending adjudication, and did not purport to decide whether a juvenile is entitled to bail pending appeal. The juvenile in Franklin had been denied bail pending adjudication because of a statute granting the trial judge discretion in placing the child pending the delinquency adjudication. The juvenile contended that he was entitled to bail by virtue of art. I, § 12 of the Constitution's Bill of Rights.
After reviewing the constitutional provision setting up the juvenile courts, this court found that "this provision of the Constitution does not contain any language indicating that it was ever the intention of the framers of the Constitution to abrogate the constitutional right to bail pending trial." 202 La. at 443, 12 So.2d at 213. Thus, the court found that the 1921 Constitution intended to afford juveniles the same right to bail pending the delinquency adjudication as it accorded to defendants pending their criminal trial.

Bail Pending Appeal
As previously mentioned, Orleans Parish was governed by juvenile procedures which differed from those applicable to the rest of the state. Prior to 1944, one such difference was that the Orleans Parish provision provided that "appeals shall not suspend the judgment of said court." La.Const. of 1921, art. VII, § 96 (as it appeared prior to 1944 La. Acts, No. 322 (adopted November 7, 1944)). The provision dealing with appeals from other parishes was silent on whether such appeals were to be suspensive. La. Const. of 1921, art. VII, § 52 (repealed by 1948 La. Acts, No. 539 (adopted November 2, 1948)).
The first case to address the issue of the juvenile's right to bail pending appeal was State v. Clark, 186 La. 655, 173 So. 137 (1937). That case involved an appeal from a delinquency adjudication in Orleans Parish. The juvenile contended that the provision disallowing suspensive appeals was in conflict with the 1921 Constitution's guarantee of bail pending appeal.
The court noted that the state constitution's Bill of Rights provided general laws which would govern unless there were a special law on the subject. The court reasoned that the constitutional provision dealing with Orleans Parish was such a special law. Thus, the special provision would prevail over the general law embodied in the Bill of Rights.
The Clark opinion did not involve the issue of the rights of juveniles from parishes other that Orleans to bail pending appeal. *693 However, the inference from Clark is that those juveniles would be entitled to a suspensive appeal and to bail pending that appeal since there were no special provisions governing their appeals.[1]
The Clark approach was not followed in the case which subsequently addressed the issue of whether juveniles from the rest ot the state are entitled to bail pending appeal. In State v. McDonald, 206 La. 732, 20 So.2d 6 (1944), the juvenile argued that, whereas the constitutional provision dealing with Orleans Parish denied the right to suspensive appeal, no such restriction was placed on appeals from other parishes. The McDonald court rejected this argument without addressing either the issue of the applicability of the right to bail provision in the Bill of Rights, or the Clark and Franklin opinions. Rather, the court found Mc-Donald's argument to be unpersuasive:
"... Neither the constitutional article nor the statutory provision sets forth that such an appeal shall suspend the execution of the judgment of the juvenile court, and not having so provided they can not be enlarged by implication to have that effect." Id. at 739, 20 So.2d at 9.
Although criticized for its methodology, the McDonald result was approved by the commentators writing at that time. Bennett, The Work of the Louisiana Supreme Court for the 1944-1945 TermCriminal Law and Procedure, 6 La.L.Rev. 644, 673 n. 117 (1946); Jackson, The Right to Bail and Suspensive Appeal in the Louisiana Juvenile Courts, 20 Tul.L.Rev. 363, 377 (1946).
The day after McDonald was decided, the constitutional provision dealing with Orleans Parish juvenile courts was amended to provide:
"... appeal shall not discharge the child from the custody of the Juvenile Court or of the person, institution, or agency to whose care such child may be committed by the Juvenile Court, unless the Supreme Court shall so order." 1944 La.Acts, No. 322, amending La.Const. of 1921, art. VII, § 96 (adopted November 7, 1944).
Four years later, the constitutional provision dealing with juvenile courts for the rest of the state was amended to include identical language. 1948 La.Acts, No. 539, amending La.Const. of 1921, art. VII, § 52 (adopted November 2, 1948).
When McDonald is read in conjunction with the constitutional amendments denying juveniles the right to a suspensive appeal, it seems that the 1921 Constitution did not intend to accord juveniles the right to bail pending appeal of their delinquency adjudication.
Regarding the issue of bail pending adjudication, it is impossible to say whether the redactors of the 1921 Constitution intended to grant juveniles that right. On the one hand, Franklin applied the general bail provision to juveniles and found a right to bail pending adjudication. On the other hand McDonald, decided a year after Franklin, retreated from this position and did not apply the bail provision to juveniles.

1974 Constitution
As previously mentioned, the 1974 Constitution's bail provision is similar to the bail provision in the 1921 Constitution. Art. I, § 18, located in the Declaration of Rights, phrases the guarantee in terms of "trial," "conviction," and "sentence." This terminology is traditionally applicable only in the context of criminal prosecutions, and suggests that the redactors did not intend to extend the guarantee to juvenile delinquency adjudications.
Regarding the juvenile provision, the language in the 1921 Constitution denying juveniles *694 the right to a suspensive appeal was not carried over. Rather, the redactors of the 1974 Constitution mandated that the legislature should provide special juvenile procedures. La.Const. art. V, § 19.
The specific language of art. V, § 19 represents a compromise agreed to by the Constitutional Convention delegates in the final days of the convention. See XXXVIII State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Jan. 15, 1974, at 62 (remarks of Mr. Derbes). Delegate Derbes explained what the compromise was intended to do:
"... Now, on the one hand there are people who want to spell out all juvenile court jurisdiction in the constitution, and only change juvenile court jurisdiction by a constitutional amendment. On the other hand, there are those of us who felt that nothing should be said about juvenile court at all, but everything should be left up to the legislature, and midstream of those two alternatives, I happen to feel that by saying that the legislature should consider separate juvenile procedures when they say how a person should be tried, I felt that that was an adequate middle ground to satisfy both people...." Id. at 64-65.
As mentioned by Delegate Derbes, the delegates had previously disagreed over the amount of detail that should exist in the constitution. See generally XII State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Aug. 28, 1973, at 3-38; XXVIII State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Nov. 16, 1973, at 13-22; XXXVI State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Jan. 8, 1974, at 64-106.
The 1921 Constitution had spelled out in detail that suspensive appeals were not available to juveniles. The 1974 Constitution does not address the matter, but instructed the legislature to devise special juvenile procedures. J.C.P. 103 is one of those special procedures enacted by the legislature pursuant to that constitutional mandate. We conclude from this that J.C.P. 103 is a valid exercise of legislative power and does not contravene the right to bail accorded to defendants in the Declaration of Rights.

THE FEDERAL CLAIMS
Even though C.J.P. 103 is not violative of the Louisiana Constitution, that statute must be scrutinized to determine whether it abridges any federal constitutional guarantees. Our inquiry begins with In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The United States Supreme Court was concerned in that case with injecting procedural due process into juvenile delinquency proceedings, for, as the court remarked, "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." Id. at 13, 87 S.Ct. at 1436, 18 L.Ed.2d at 538.
The court broadly discussed the shortcomings of the states' juvenile systems. Nonetheless, the holding of the case is relatively narrow. See Rosenberg, The Constitutional Rights of Children Charged With Crime: Proposal for a Return to the not so Distant Past, 27 U.C.L.A. L.Rev. 656, 661-73 (1980). Gault ruled that, in the adjudicative stage of a juvenile delinquency proceeding, as a result of which the child may be incarcerated in a state institution, the following constitutional protections attach: notice of the charges, assistance of counsel, cross-examination and confrontation, and the privilege against self-incrimination.
Cases subsequent to Gault have identified further some of the specific components of the juvenile's constitutional rights. See, e. g., In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In embellishing upon the analytical framework posited in Gault, the court has made clear that Gault did not superimpose completely the constitutional rights assured to adults into juvenile delinquency adjudications. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Rather, the applicable due process standard in juvenile proceedings is fundamental fairness. In McKeiver, it was determined that trial by jury is not a necessary ingredient of *695 fundamental fairness in juvenile delinquency proceedings. Further delimitation of Gault's scope has devolved upon the state and lower federal courts. See, e.g., In re Bruno, 388 So.2d 784 (La.1980); In re Grand Jury Subpoenas to Graham, 387 So.2d 1140 (La. 1980); In re Causey, 363 So.2d 472 (La. 1978); In re Dino, 359 So.2d 586 (La.1978).
This court has previously resolved the separate question of whether fundamental fairness mandates that juveniles be admitted to bail pending adjudication. In State v. Hundley, 263 La. 94, 267 So.2d 207 (1972), the trial judge had denied bail to two young girls pending their delinquency adjudications based upon possession of marijuana. This court ordered that the judge admit the children to bail. Gault was cited as authority for this court's action, along with State v. Franklin, supra. More recently, this court ordered that another juvenile be admitted to bail pending his delinquency adjudication. In re Aaron, 390 So.2d 208 (La. 1980).
Implicitly recognized in these two cases is the concept that bail pending adjudication is necessary for the proceedings to conform to the fundamental fairness mandated by Gault We adhere to that view today, although we recognize that other states which have addressed the issue have not found bail pending adjudication to be a component of fundamental fairness at the adjudicatory stage. See Pauley v. Gross, 1 Kan.App.2d 736, 574 P.2d 234 (1977); Baker v. Smith, 477 S.W.2d 149 (Ky. 1971); Morris v. D'Amario, R.I., 416 A.2d 137 (1981).
Allowing the juvenile to be free pending adjudication preserves the presumption of innocence. See Comment, Juvenile Right to Bail, 11 J. Fam. L. 81, 100-01 (1971). That presumption is a corollary to the requirement that the state prove its case beyond a reasonable doubt. This latter standard has been found by the court to be necessary in juvenile delinquency proceedings. In re Winship, supra.
Once the delinquency determination has been made, however, the presumption of innocence no longer attaches. Further, we are not persuaded that the principles of Gault are applicable once the delinquency determination has been made. At the outset of its opinion, the Gault court emphasized that its decision did not deal with either the pre-judicial stage or the post-adjudicative or dispositional stage. 387 U.S. at 13, 87 S.Ct. at 1436, 18 L.Ed.2d at 538. This limited nature of the opinion was made clear in a subsequent footnote:
"The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary application to other steps of the juvenile process." Id. at 30-31, 87 S.Ct. at 1445, 18 L.Ed.2d at 548 n. 48.
Accord, In re Winship, 397 U.S. at 359, 90 S.Ct. at 1070, 25 L.Ed.2d at 372 n. 1.
We conclude that the juvenile's right to bail ends once the delinquency determination has been made. Prior to the adjudication, bail is available to the juvenile as part of the procedural due process to which he is entitled. After he has been found to be delinquent, however, the Gault requirements are not operative and due process is not offended when the juvenile is denied bail pending appeal.
Nor do we find that the juvenile is entitled to bail pending appeal by virtue of the equal protection clause of the Fourteenth Amendment. Gault recognized that post-adjudication dispositions of juveniles are unique to the juvenile process. Thus, we reject at the outset Bank's contention that juvenile delinquents are situated similarly to convicted adult defendants. Their positions are simply not analogous.
For one thing, the authority of the juvenile court ceases when the juvenile reaches his twenty-first birthday. C.J.P. 89. And, the juvenile court judge is required to "impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society." C.J.P. 86.
*696 Suspending the effect of the judgment of disposition would undermine the rehabilitative efforts of the juvenile court system by shortening the time available for such rehabilitation. In some cases, the jurisdiction of the juvenile court over the child might end prior to the final outcome on appeal. Such a result is possible in the instant case. The trial judge ordered Banks committed for approximately one year. Over four months has elapsed while Banks has litigated the issue of his right to bail and a suspensive appeal. His appeal on the merits has not yet occurred. By contrast, when a suspensive appeal is allowed in a criminal case, the duration of the sentence is not affected and the defendant merely begins to serve his sentence at the conclusion of the appeal.
For these reasons, we reject Banks' equal protection challenge. Accord, In re Kelly, 236 N.W.2d 50 (Iowa 1975). For the reasons assigned, the trial judge's ruling is affirmed. The prior order of this court ordering the relator to be admitted to bail pending argument in this court is recalled, and the trial judge's order transferring relator to the custody of the Department of Corrections is reinstated.
DENNIS, J., dissents with reasons.
LEMMON, J., concurs and will assign reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
Article V, § 19, which provides that the detention, custody and determination of certain children accused of having committed criminal offenses shall be exclusively pursuant to special juvenile procedures was never intended as an authorization for the legislature to strip juveniles of fundamental rights otherwise protected by the constitution. It was certainly not the delegates' intention that a juvenile's right to bail or to other safeguards of fairness in judicial proceedings not essentially different from a criminal trial, see State in the Interest of Dino, 359 So.2d 586, 595 (La. 1978), could be affected by such "special juvenile procedures." This is clear throughout the debates, but was expressed succinctly by delegate Derbes:
"Mr. Jack:
Mr. Derbes, by the term `juvenile procedures' what are you talking about?
"Mr. Derbes:
I'm talking about the juvenile procedures and the methods of treatment of juveniles which are currently spelled out in the revised statutes, Mr. Jack." XXXVIII State of Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Jan. 15, 1974, at 63.
Surely the majority does not mean that whatever rights a juvenile has under our state constitution to due process of law, equal protection of laws, property, privacy, freedom of expression and religion, etc. may be modified or abrogated by "special juvenile procedures."
The majority's federal equal protection analysis is faulty. It asserts that a juvenile's position is "simply not analogous" to that of a convicted adult defendant. This may be true of juveniles who are not committed to correctional institutions after adjudication. But for those like relator, who are sent to places which resemble jails in every important essential, it clearly is false. As the United States Supreme Court observed in In re Gault, the slight differences between juvenile and adult confinement is of "no constitutional consequence." 387 U.S. 1, 27, 87 S.Ct. 1428, 1443, 18 L.Ed.2d 527, 546 (1967).
It is ironic that the majority should give as a reason for its decision the argument that post-adjudication bail might shorten the time available for rehabilitation. Laying aside the very dubious assumption that rehabilitation usually occurs in such institutions, I think this court should be more impressed by the other possibility that a juvenile who has been convicted unfairly may rarely be able to appeal and have his conviction reversed before serving all or a substantial part of his sentence. Thus, the decision of the majority not only erodes all state constitutional rights of juveniles but it also erects a great practical deterrent to juvenile appeals.
LEMMON, Justice, Concurring.
*697 I agree that La.Const.Art. I, § 18 (1974) does not require this court to declare C.J.P. Art. 103 unconstitutional. Section 18 simply does not apply to delinquency proceedings.
Thus, the trial or appellate court may decide whether or not to suspend, pending appeal, the effect of a judgment of disposition ordering an adjudicated delinquent committed to the custody of the Department of Corrections for a period of confinement. See C.J.P. Arts. 83, 87. If the court in exercising its discretion decides not to suspend the judgment of disposition, that decision in effect denies release pending appeal. C.J.P. Art. 103 obviously vests this discretion in the trial and appellate judges handling the case.
In deciding whether to permit the adjudicated delinquent to remain free (or to remain without probationary conditions or suspension) pending appellate disposition of the case, trial courts should consider such factors as the possible danger that the adjudicated delinquent may commit other offenses if he remains free, the possibility of flight to avoid custody, and the merit (or frivolity) of the issues raised on appeal.[1] See 18 U.S.C. § 3148. Because the decision involves the exercise of discretion, this court may review the exercise of that discretion. La.Const.Art. V, § 5 (1974).
I expressly decline to discuss in this case the federal constitutional right of alleged delinquents to preadjudication release on bail. The Legislature has outlined the circumstances under which alleged delinquents may be held in custody pending an adjudication hearing. See C.J.P. Arts. 38-41. The decision on whether these articles are constitutional should be made when the issue is squarely presented.
NOTES
[1] Not allowing suspensive appeals from Orleans Parish while allowing such appeals from the rest of the state could be justified on the basis of the several differences which existed between Orleans Parish and the rest of the state at the time the 1921 Constitution was adopted. Since Orleans juveniles appealed to the criminal district court and could thereafter seek writs of certiorari from the supreme court, the appellate process was longer in Orleans Parish. Also, since appeals in Orleans Parish lay on both questions of law and of fact, the appeal had the potential to be more involved.
[1] See Acts 1981, No. 438, amending C.Cr.P. Art. 314, relating to postconviction bail for adults, in which some of these factors are expressly listed.