817 So.2d 26 (2002)
STATE in the Interest of D.J.
No. 2001-KA-2149.
Supreme Court of Louisiana.
May 14, 2002.
*27 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Ralph E. Brandt, Jr., Edward R. McGowan, New Orleans, Counsel for Applicant.
Ferdinand F. Valteau, III, New Orleans, Derwyn D. Bunton, Harold P. DuCloux, III, Counsel for Respondent.
Ellis P. Adams, Jr., Counsel for Amicus Curiae Louisiana District Attorney's Association.
Robert S. Glass, New Orleans, Laval S. Miller-Wilson, Marsha L. Levick, Counsel for Amicus Curiae Juvenile Law Center, and Louisiana Association of Criminal Defense.
VICTORY, J.
This is a direct appeal brought by the State of Louisiana from the Juvenile District Court for the Parish of Orleans seeking reversal of the trial court's finding that La. Ch. C. art. 808 is unconstitutional and that the juvenile offenders in this matter are entitled to a jury trial. After reviewing the record and the applicable law, we reverse the judgment of the trial court finding La. Ch. C. art. 808 to be unconstitutional and hold that the juvenile offenders are not entitled to a jury trial.

FACTS AND PROCEDURAL HISTORY
On October 24, 2000, D.J. and A.A., 13-year-old juveniles, were charged by petition in juvenile court[1] with allegations of delinquency, specifically, attempted second degree murder and carrying a firearm by a student on school property. La. R.S. 14:27 (R.S. 14:30.1); La. R.S. 14:95.2.[2] On *28 November 30, 2000, D.J. filed a motion for a jury trial, in which A.A. joined. The court held a hearing on December 18, 2000, and counsel for the juveniles subsequently submitted supplemental briefs in support of the motion on March 1, 2001. On March 5, 2001, the court entertained additional arguments on the merits of the motion. The court held two additional hearings at which the motion was discussed, and ultimately, on June 14, 2001, the court granted the motion for a jury trial, finding that the juveniles in this case were entitled to a jury trial based on changes to the justice system which had caused delinquency adjudications to become predominantly criminal in nature. Four days later, the court issued a supplemental ruling, declaring La. Ch. C. art. 808 unconstitutional under La. Const. Art. I, § 2 and the 14th Amendment to the United States Constitution. In this supplemental and amended judgment, the court specifically addressed the operation of La. Ch. C. art. 808 and whether it provided juveniles due process. While the court found that the code article "does not statutorily prohibit the right to elect a trial by jury in juvenile court proceedings, as it is read," it also noted that "the right to elect a trial by jury is not provided for either." The court then ruled that the article, "as it excepts to extending the right to elect a trial by jury to juveniles in serious delinquency proceedings is unconstitutional."
The state objected to the court's rulings and filed the instant appeal. Both juveniles charged in this matter and numerous amici[3] argue that recent developments in juvenile law have made the proceedings more criminal than civil in nature and as a result, due process requires that juveniles be afforded the right to elect a trial by jury. The state maintains otherwise, arguing that the rehabilitative focus of juvenile proceedings has not been undermined by recent legislative enactments to a degree requiring that the due process standard of "fundamental fairness" necessitates that juveniles be afforded the right to a trial by jury.

DISCUSSION
The trial court's judgment focused only on Article 808 of the Children's Code which provides: "All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings brought under this title." (Emphasis added). In commenting on its original ruling which granted the juvenile a jury trial, the court described the legislation as an enabling article and did not find that it offended the due process rights of juveniles. Notwithstanding its characterization of the code article, the court nonetheless found it unconstitutional because it failed to guarantee juveniles the right to a *29 jury trial in serious delinquency proceedings.
In fact, while the court correctly found that the article by its terms did not prohibit jury trials in juvenile matters, when read in conjunction with La. Ch. C. art. 882, which provides that a juvenile "adjudication hearing shall be held before the court without a jury," the Children's Code effectively prohibits jury trials in all juvenile court proceedings. Accordingly, the constitutionality of the absolute prohibition on jury trials in delinquency proceedings under the due process clauses of the Louisiana and United States Constitutions must be addressed on the merits and affords this Court an opportunity to revisit its holding in State in Interest of Dino, 359 So.2d 586 (La.1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), rev'd on other grounds, State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485.

A Review of the Juvenile Justice System
The juvenile justice system dates back to the early 1900s and was founded as a way to both nurture and rehabilitate youths.[4] Janet E. Ainsworth, Re Imagining Childhood and Reconstructing the Legal Order: The Case for Abolishing the Juvenile Court, 69 N.C. L.Rev. 1083, 1096-97 (1991) [hereinafter Re-Imagining Childhood]; see also, Barry C. Feld, Violent Youth and Public Policy: A Case Study of Juvenile Justice Law Reform, 79 U. Minn. L.Rev. 965, 969 (1995) [hereinafter Violent Youth]. "[O]rdinary retributive punishment for the adolescent [was] inappropriate," in part, because "[j]uvenile court philosophy made no distinction between criminal and non-criminal behavior, as long as the behavior was considered deviant or inappropriate to the age of the juvenile." Ainsworth, Re-Imagining Childhood, supra, at 1097-98. As one commentator notes, "[t]he hallmark of the [juvenile] system was its disposition, individually tailored to address the needs and abilities of the juvenile in question." Id. at 1099. The Louisiana juvenile system was founded upon this philosophy. See e.g., La. Ch. C. art. 801.
"Thus, the unique nature of the juvenile system is manifested in its noncriminal, or `civil,' nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as parens patriae in managing the welfare of the juvenile in state custody." In re C.B., 97-2783 (La.3/11/98),708 So.2d 391, 396-97. "Consequently, there has been recognized in the juvenile system a `quid pro quo' under which juveniles who are placed in adult facilities without the safeguards of due process that are enjoyed by adults will receive in return rehabilitative treatment rather than mere punitive incarceration." Id. (citing Doe v. McFaul, 599 F.Supp. 1421, 1428 (N.D.Ohio 1984); Baker v. Hamilton, 345 F.Supp. 345, 352 (W.D.Ky. 1972); Osorio v. Rios, 429 F.Supp. 570, 574 (D.C.P.R.1976)).

The Right to Jury Trials in the Juvenile Justice System
In In re C.B., we noted that it is the above policy "that has guided this Court and others in determining which constitutional rights are guaranteed to juveniles under the dictates of fundamental fairness, inherent in the due process clause, beginning with the determination that the applicable due process standard in juvenile proceedings is fundamental fairness." 708 So.2d at 397 (citing In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 *30 L.Ed.2d 527; State in Interest of Banks, 402 So.2d 690 (La.1981); State in Interest of Causey, 363 So.2d 472 (La.1978)). "Because of the fundamental differences between the adult and juvenile systems, however, due process, and implicitly fundamental fairness, do not require that every constitutional right guaranteed to adults be automatically granted to juveniles." Id. (Cites omitted).
The United States Supreme Court in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), held that the Due Process Clause of the Fourteenth Amendment does not impose the right to jury trial upon the states in juvenile delinquency proceedings. Specifically, the McKeiver Court noted that the Supreme Court had previously refrained from taking "the easy way with a flat holding that all rights constitutionally assured for the adult accused are to be imposed upon the state juvenile proceeding." 403 U.S. at 545, 91 S.Ct. at 1986. Rather, the Court has taken a selective approach in determining which rights are required, under the fundamental fairness doctrine, in juvenile delinquency proceedings. See e.g., Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy guarantees are applicable in delinquency proceedings); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (delinquency adjudications must rest on proof beyond a reasonable doubt); In re Gault, supra (juveniles are entitled to due process in delinquency proceedings; specifically, right to advance notice of charges, a fair and impartial hearing, the right to counsel, right to confront and cross-examine witnesses and protection against self-incrimination); see also State in the Interest of Banks, 402 So.2d 690 (La.1981) (juveniles are entitled to pre-adjudication bail); State in the Interest of Batiste, 367 So.2d 784 (La.1979) (a child in juvenile proceedings is entitled to adequate written notice of the charge and of the factual allegations upon which it rests); State in Interest of Causey, 363 So.2d 472 (La.1978) (a defense of insanity may be raised in delinquency proceedings). The Supreme Court reasoned in McKeiver that if a jury trial were required it would "remake the juvenile proceeding into a fully adversary process and [would] put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding." McKeiver, 403 U.S. at 545, 91 S.Ct. at 1986.
Consequently, this Court in Dino tracked the holding of McKeiver and held that "[f]or reasons similar to those expressed in McKeiver, a majority of this Court has concluded that the Louisiana due process guaranty ... does not afford a juvenile the right to a jury trial during the adjudication of a charge of delinquency based upon acts that would constitute a crime if engaged in by an adult." Dino, 359 So.2d at 598.
In the present case, the juveniles and the amici strenuously argue that this policy-based analysis applied more than 20 years ago when McKeiver and Dino were decided is outdated and that recent changes in state law, as well as an ongoing national critique of the juvenile justice system, render the reasoning behind the two cases outdated and inapplicable to current conditions. The juveniles and their amici argue that since the McKeiver decision, the Louisiana juvenile system has taken on more trappings of the criminal justice system, so much so that the only substantial difference between the two is the right to a jury trial. They argue that not only do juvenile defendants have virtually all of the constitutional rights afforded to adult defendants (except the jury trial right), but that the following two recent legislative amendments have torn down *31 the remaining characteristics of what traditionally identified the juvenile system.
First, in 1994, the legislature amended La. Ch. C. art. 407(A) (by Act 120 of 1994), opening to the public all proceedings in juvenile delinquency cases involving crimes of violence as defined in La. R.S. 14:2(13), which includes attempted second degree murder (one of the instant crimes). See also La. Ch. C. art. 412; La. Ch. C. art. 879(B). They argue that this legislative action destroyed the confidentiality of certain juvenile proceedings which previously had been a hallmark of the juvenile system. For example, in the instant case, there were at least two newspaper articles about the crime. One of the reasons for not allowing jury trials in juvenile adjudications, besides the non-criminal nature of juvenile proceedings, was the issue of confidentiality. "Because the emphasis in traditional juvenile proceedings has been on confidentiality, it has been suggested that introduction of a `public element' represents a `clear betrayal of the juvenile court philosophy.'" Institute of Judicial Administration, A.B.A., Juvenile Justice Standards Project Standards Relating to Adjudication, p. 71 (1977) (citation omitted).
Second, since 1994, the Habitual Offender Law, La. R.S. 15:529.1, has provided that juvenile adjudications for drug offenses or crimes of violence (as defined by La. R.S. 15:529.1(A)(2))[5] may be used to enhance a subsequent adult felony offense. Before this change, juvenile adjudications were sealed and did not follow an individual into adulthood.[6]
With these changes taking place, the juveniles point out that many commentators are calling for states to give juvenile offenders the right to trial by jury. See e.g., Janet E. Ainsworth, Youth Justice in a Unified Court: Response to Critics of Juvenile Court Abolition, 36 B.C. L.Rev. 927, 942 44 (1995) [hereinafter Youth Justice] (addressing the "single most serious procedural infirmity of the juvenile court its lack of jury trials...."). Further, thirteen states currently allow jury trials in juvenile delinquency adjudication proceedings as a matter of state law.[7]See also *32 R.L.R. v. State, 487 P.2d 27, 32 (Alaska 1971) (when juvenile could have been incarcerated for many years for alleged sale of LSD and sale was regarded with high degree of moral opprobrium, juvenile was entitled under state constitution to trial by jury). Commentators note that the "increasing role of punishment in juvenile justice" makes the right to trial by jury that much more important. Feld, Violent Youth, supra, at p. 1102.
However, in spite of these arguments, for the reasons stated below, we find that fundamental fairness does not require us to overrule Dino's holding that due process does not afford a juvenile the right to a jury trial during the adjudication of a charge of delinquency in juvenile court.[8] Since Dino, this Court had occasion to review the juvenile justice system in accordance with the fundamental fairness standard in In re C.B., supra. In that case, this Court considered the constitutionality of a recently enacted statute which authorized the transfer of adjudicated juvenile delinquents to adult correctional facilities when the delinquents reached the age of 17. The Court noted that changes in the juvenile system have resulted in the Children's Code now granting "to juveniles adjudicated in juvenile court proceedings essentially all rights guaranteed to criminal defendants by the federal and state constitutions, except the right to trial by jury." Id. at 396. However, we specifically discussed "recent amendments to the Children's Code" that have "blurred the distinction between the adult and juvenile court systems," which are the same amendments that the appellees in this case point to as justification for overruling Dino, i.e., that certain juvenile delinquency cases are now open to the public by virtue of La. Ch. C. art. 407, and that the Habitual Offender Law, La. R.S. 15:529.1, now provides that juvenile adjudications for drug offenses or certain crimes of violence may be used to enhance subsequent felony offenses. Id. Consequently, in considering whether the statute at issue was constitutional in In re C.B., the Court stated that "the issue now becomes how much of the unique nature of the juvenile procedures can be eroded before due process requires that the juveniles be afforded all the guarantees afforded adult criminals under the constitution, including the right to trial by jury." Id. Ultimately, we decided that confinement to hard labor at adult facilities would erode the unique nature of the juvenile procedure so far that due process required all the guarantees under the constitution; however, rather than require a jury trial, the Court declared the statute allowing the transfer to adult facilities to be unconstitutional under the due process clause. This holding is significant, because it infers that the Court determined that the other statutes that "blurred the distinction" between adult and juvenile proceedings, such as the public hearing and the sentence enhancement statutes, did not offend due process requirements to such an extent that a jury trial would be required.
In fact, in McKeiver, on which Dino was based, the United States Supreme Court "focused on the role of the jury as a `factfinder,'... and noted that the imposition of a jury trial would not `strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner.'" Id. (Citing McKeiver, supra, 403 U.S. at 547, 91 S.Ct. 1976). Indeed, affording juvenile offenders *33 the right to trial by jury would tend to destroy the flexibility of the juvenile judge as the trier of fact, which allows the judge to take into consideration social and psychological factors, family background, and education in order to shape the disposition in the best interest of both the child and society.
Further, notwithstanding the changes in the juvenile justice system discussed above, there remains a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime. In fact, if the court adjudicated the juvenile in the instant case delinquent, he would face a maximum sentence of eight years detention while the court would retain the discretion to sentence him to a lighter term. La. Ch. C. art. 897; La. Ch. C. art. 897.1. An adult defendant convicted of the identical charge would face a maximum sentence of 55 years imprisonment at hard labor, 50 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:27 (La. R.S. 14:30.1); La. R.S. 14:95.2.[9]
Notably, the Louisiana legislature, unlike some of its counterparts, has not elected to enact legislation that would enable the state to punish juveniles under the age of 14 at the time of the offense beyond their 21st birthdays. In highly publicized cases from other states, juveniles younger than D.J. have faced, and sometimes received sentences of life imprisonment. In Florida, Lionel Tate, age 12 at the time of the offense, received a sentence of life imprisonment without benefit of parole for the murder of a six-year-old acquaintance. In Michigan, Nathaniel Abraham, age 11 when he shot and killed a stranger, faced a possible sentence of life imprisonment for murder but was ultimately sentenced to a term of incarceration providing for his release from custody at the age of 21. In contrast, in Louisiana, juveniles adjudicated delinquent who were under the age of 14 when they committed the offense may be incarcerated only until their 21st birthdays.[10]
*34 Further, despite the criticism of McKeiver by some commentators, the vast majority of the jurisdictions which have examined the issue have determined that such a right is not guaranteed by the Due Process Clause. Challenges, like the instant one, claiming that fundamental changes in the nature of the juvenile justice system have undermined the validity of the McKeiver Court's analysis have been routinely rejected. See e.g., United States v. C.L.O., 77 F.3d 1075, 1077 (8th Cir.1996), cert. denied, 518 U.S. 1027, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996) (noting that "[m]ore than a decade after the McKeiver decision," in Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984), "the Supreme Court cited McKeiver approvingly...."); Valdez v. State, 33 Ark.App. 94, 801 S.W.2d 659, 661 (1991) (due process standard of fundamental fairness maintained by enactment of Arkansas Juvenile Code without affording a jury trial); see also State ex rel. Juvenile Dep't of Klamath County v. Reynolds, 317 Or. 560, 857 P.2d 842, 845-50 (1993); State v. Schaaf 109 Wash.2d 1, 743 P.2d 240, 245-47 (1987).
In addition, attempts to recognize a state constitutional right to a jury trial in juvenile matters have been largely unsuccessful. See State v. Lord, 117 Wash.2d 829, 822 P.2d 177, 215-16 (1992), cert. denied, 506 U.S. 856, 113 S.Ct. 164, 121 L.Ed.2d 112 (1992); Reynolds, supra, 857 P.2d at 849-50. Arguments claiming that particular statutory schemes are so punitive and have little or no rehabilitative focus so as to render McKeiver inapplicable have been similarly unavailing. See e.g., United States ex rel. Murray v. Owens, 465 F.2d 289, 293-94 (2d Cir.1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973); In re Myresheia W., 61 Cal.App.4th 734, 72 Cal.Rptr.2d 65, 69 (1998), review denied, 1998 Cal. LEXIS 3761 (1998). Finally, arguments that other federal constitutional protections invoke a juvenile's right to a jury trial have failed. See e.g., People in Interest of T.M., 742 P.2d 905, 911-12 (Colo.1987) (rejecting argument that equal protection clauses of federal and state constitutions require that juveniles be afforded the same right to jury trial as adult criminal defendants); Schaaf, supra (rejecting argument that the strict scrutiny test applies to juvenile proceedings because juveniles are not a suspect class and because right to a jury is not a fundamental right). In fact, despite the variety of arguments on the issue, courts have almost universally rejected the claim that juveniles possess a constitutional right to a trial by jury. See generally, Annotation, Right to Jury Trial in Juvenile Court Delinquency Proceedings 100 A.L.R.2d 1241 (1965 & supp.1997) (summarizing the law in several jurisdictions regarding juveniles' right to a jury trial).

CONCLUSION
Thus, we follow the rulings from the United States Supreme Court, this Court, and the vast majority of other jurisdictions on this issue, and hold that a trial by jury in a juvenile proceeding is not constitutionally required under the applicable due process standard in juvenile proceedings. While we recognize that the Louisiana juvenile justice system is far from perfect, we are "not yet ready to spell the doom of the juvenile court system *35 by requiring jury trials in juvenile adjudications." In re C.B., supra at 398.

DECREE
For the reasons stated herein, the judgment of the Juvenile District Court for the Parish of Orleans declaring La. Ch. C. art. 808 unconstitutional is reversed and the matter is remanded to that court for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
CALOGERO, C.J., concurring.
While I joined two other justices in dissenting in State in the Interest of Dino, 359 So.2d 586 (La.1978) on the basis that denial of a jury trial to juveniles is a violation of equal protection under Article I, Section 3 of the Louisiana Constitution, that issue is not involved in this case.
I concur in the majority opinion that due process does not require the State to provide jury trials to juveniles; that issue has already been decided by the United States Supreme Court in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). If juveniles are to be afforded a trial by jury it is not going to be through this court's construing that right as constitutionally mandated by due process, but by the legislature's making a statutory change which is within their power.
JOHNSON, J., Dissenting.
The issue presented for our review is whether the trial court erred in declaring La. C.Ch.C. art. 808 unconstitutional in that it offends the Due Process Clause of the U.S. and Louisiana Constitutions by excluding the right to trial by jury in juvenile court proceedings.[1]
The applicable due process standard in juvenile proceedings is fundamental fairness. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Recent and numerous changes in our Juvenile Justice System require a reevaluation of fundamental fairness and affords this Court an opportunity to revisit our holding in State in Interest of Dino, 359 So.2d 586 (La.1978).[2]
It is important to note that the McKeiver decision lacked a majority rationale and does not stand as the definitive resolution to the issue at hand. The Supreme Court's wavering pronouncement of the denial of jury trial rights to juvenile offenders, signified the evolving nature of the juvenile justice system even 30 years ago. Indeed, three justices dissented, reasoning juveniles have an unqualified right to a jury trial. At least two other justices would grant jury trials where a delinquency proceeding strays too far from its benevolent conception.[3]
*36 In the present case, the juveniles and the amici argue vociferously that the policy-based analysis applied more than 30 years ago when McKeiver and Dino were decided is outdated and that recent changes in state law as well as an on-going national critique of the juvenile justice system render the reasoning behind the two cases outdated and inapplicable to current conditions. I agree.
In In re C.B., et al., 97-2783 (La.3/4/98), 708 So.2d 391, this Court had occasion to thoroughly examine the background and purpose of the juvenile court system and how it meets current challenges. The Louisiana juvenile system was founded upon the philosophy of nurturing and rehabilitating youths. See e.g., La.Ch.C. art. 801. Since the McKeiver decision, however, the Louisiana juvenile system has taken on more trappings of the criminal justice system, so much so that the only substantial difference between the two is the right to a jury trial. See e.g., Feld, Violent Youth, supra, at 966 (The convergence between juvenile and criminal courts "has transformed juvenile courts from nominally rehabilitative welfare agencies into scaled-down, second-class criminal courts for young people."). Not only do juvenile defendants have virtually all of the constitutional rights afforded to adult defendants (except the jury trial right), but two recent legislative amendments have torn down the remaining characteristics of what traditionally identified the juvenile system.
First, in 1994, the legislature amended La.Ch.C. art. 407(A) (by Act 120 of 1994), opening to the public all proceedings in juvenile delinquency cases involving crimes of violence as defined in R.S. 14:2(13), which includes attempted second degree murder (one of the instant crimes). See also, La.Ch.C. art. 412; La.Ch.C. art. 879(B). This legislative action destroyed the confidentiality of certain juvenile proceedings which previously had been a hallmark of the juvenile system. For example, in the instant case, there were at least two Times-Picayune newspaper articles about the crime, which identified both offenders by name: Natalie Pompilio, Two teenagers shoot each other at school; 13-year-old hits rival, 15, who grabs gun, fires, Times-Picayune, September 27, 2000 at Al; Bob Ussery, Suspect in shooting released from hospital; Woodson student faces Friday hearing, Times Picayune, October 12, 2000, at B3; see also Katy Reckdahl, Kids in the Halls, Gambit Weekly, May 22, 2001, cover story. One of the reasons for not allowing jury trials in juvenile adjudications, besides the philosophical implications that juvenile proceedings were not criminal proceedings, was the issue of confidentiality. "Because the emphasis in traditional juvenile proceedings has been on confidentiality, it has been suggested that introduction of a `public element' represents a `clear betrayal of the juvenile court philosophy.'" Institute of Judicial Administration, A.B.A., Juvenile Justice Standards Project Standards Relating to Adjudication, p. 71 (1977) (citation omitted). However, this is no longer a concern for juveniles being adjudicated delinquents on the basis of violation of a "violent offense" as defined in La. R.S. 14:2(13).
Second, the Habitual Offender Law provides that juvenile adjudications for drug offenses or crimes of violence (as defined by R.S. 15:529.1) may be used to enhance a *37 subsequent adult felony offense.[4] Before this change, juvenile adjudications were sealed and did not follow an individual into adulthood.[5]
In addition, other amendments to the Children's Code further blur the distinction between juvenile and criminal courts. For example, the Children's Code calls for mandatory maximum sentencing in certain cases thus eliminating the traditional discretion of the juvenile court judge to mold a disposition to the needs of the juvenile. La.Ch.C. art. 897.1. Furthermore, the four Louisiana Training Institutes, where most juvenile offenders are sent, are becoming increasingly more like adult prisons, providing less rehabilitation, education, etc. and are becoming more punishment oriented. See Fox Butterfield, Louisiana Settles Suit, Abandoning Private Youth Prisons, N.Y. Times, September 8, 2000; Butterfield, Privately Run Juvenile Prison in Louisiana is Attacked for Abuse of Inmates, N.Y. Times, March 16, 2000; Butterfield, Few Options or Safeguards In a City's Juvenile Courts, N.Y. Times, July 22, 1997, at Al ("[T]he four Louisiana Training Institutes to which convicted juvenile offenders are sent are reportedly the scenes of the most violent and abusive practices of any children's prisons in the nation.")[6]
With these types of changes taking place, most commentators are calling for states to give juvenile offenders the right to trial by jury. See e.g., Janet E. Ainsworth, Youth Justice in a Unified Court: Response to Critics of Juvenile Court Abolition, 36 B.C. L.Rev. 927, 942-44 (1995) [hereinafter Youth Justice] (addressing the "single most serious procedural infirmity of the juvenile court-its lack of jury trials...."). Thirteen states currently allow jury trials in juvenile delinquency adjudication proceedings as a matter of state law.[7]See also R.L.R. v. State, *38 487 P.2d 27, 32 (Alaska 1971) (when juvenile could have been incarcerated for many years for alleged sale of LSD and sale was regarded with high degree of moral opprobrium, juvenile was entitled under state constitution to trial by jury). Commentators note that the "increasing role of punishment in juvenile justice" makes the right to trial by jury that much more important. Feld, Violent Youth, supra, at p. 1102. They argue that because juveniles are facing mandatory sentences and juvenile adjudications are being used to enhance felony convictions, it is essential that the juvenile adjudication process be fair and accurate.
The protection afforded juvenile offenders has been further expanded by our recent ruling in In re C.B, supra. There, we struck down a legislative change[8] which allowed for the incarceration of juvenile delinquents in adult facilities upon reaching the age of 17, without first affording them the opportunity to have a jury trial in that it violated state constitutional right to due process. Although we did not grant the juveniles the right to trial by jury in In re C.B., we did note the increasing criminal focus on the punitive aspects of delinquency proceedings and suggested that there may come a time when the juvenile justice system is so far removed from its original purpose and character such that due process dictates the right to trial by jury, thereby rendering McKeiver and its rationale obsolete. We also noted that the plurality in McKeiver even recognized the tentative nature of its ruling and that the issue may one day be ripe for revisiting when it stated: "If the formalities of the criminal adjudication process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment, we are declined to give impetus to it." McKeiver, at 551, 91 S.Ct. at 1989.
I believe that our juvenile court system has evolved so drastically in nature that due process requires that juvenile offenders be afforded the right to elect to be tried by a jury. Even without the right to jury trial, all the elements necessary to make the juvenile process into an adversary process have already been injected into the juvenile system including the right to counsel, the privilege against self-incrimination, and the right to confront and cross-examine witnesses.[9]
Moreover, given the incorporation of principles of punishment and accountability into the juvenile system, the adjudications have become more criminal than civil in nature. As stated, juvenile delinquency cases involving crimes of violence, as defined by LSA R.S. 14:2(13), are now open to the public, which essentially destroys the confidentiality and intimacy of certain juvenile proceedings. As detailed above, the instant case has received sensational media coverage. Not only have the facts of this case been publicized, but the names of the offenders involved have been revealed. The defendant certainly does not have the benefit of any confidentiality that the juvenile justice system envisioned upon its inception. This adjudication, through *39 its extreme popularized status, whatever the outcome, will shadow the defendant throughout his childhood and well into his adult years.
In addition, the Habitual Offender Law provides that juvenile adjudications for drug offenses or crimes of violence, as defined by LSA R.S. 15:529.1, may be used to enhance subsequent felony offenses. If defendant, in the instant case, is adjudicated, he is faced with the enhancement statutes that add to the real possibility of future exposure to multiple bill consequences as an adult. The adjudication would be more than a mere factor in sentencing him as an adult. Clearly, these "adjudications" are equivalent to adult "convictions." Therefore, under the Habitual Offender Law, if he is adjudicated delinquent for the crimes charged, he would have a "conviction" on his record for attempted second degree murder without having had the benefit of a jury trial.
I disagree with the State's argument that affording juvenile offenders the right to trial by jury would destroy the flexibility of the juvenile judge as the trier of fact. As in many other modern juvenile court statutes, the legislature has separated the proceedings into two phases: adjudicative and dispositional.[10] While a jury would be the appropriate trier of fact at the adjudicative phase, the juvenile judge would retain flexibility in the dispositional phase of the proceeding. The judge would still be free to take into consideration social and psychological factors, family background, and education in order to shape the disposition in the best interest of both the child and society. In fact, if the court adjudicated the defendant in the instant case delinquent, he would face a maximum sentence of eight years detention while the court would retain the discretion to sentence him to a lighter term. La.Ch.C. art. 897; La. Ch.C. art. 897.1. An adult defendant convicted of the identical charge would face a maximum sentence of 55 years imprisonment at hard labor, 50 years without benefit of parole, probation or suspension of sentence. R.S. 14:27 (R.S. 14:30.1); R.S. 14:95.2. However, it should also be recognized that any adult charged with an offense punishable by more than six months imprisonment would be entitled to exercise the right to a trial by jury. La. Const. art. I, § 17; La.C.Cr.P. art. 779(A). This disparity between penalties meted out to the adult and juvenile offender apparently reflects the widely-held belief that juveniles who commit crimes are less culpable than their adult counterparts. It is clear that allowing the right to jury trial will not destroy this unique feature of the juvenile system.
Trial by jury is a safeguard "fundamental to the American scheme of justice ... in order to prevent government oppression... through the interposition of the `common sense judgment' of a jury between the accused and his adversary." Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Affording juvenile offenders, who are viewed as `criminals' in our society today, the right to trial by jury will provide the safeguards of due process that are enjoyed by adult `criminals.' Given the transformation of the modern juvenile court system from `civil' to `criminal' in nature, through numerous and significant legislative changes in Louisiana, it is clear that the rationales behind McKeiver and Dino are no longer tenable and due process and fundamental fairness, therefore, require the extension of the jury trial to the defendant in this case.
*40 Although the trial court's decision was ultimately premised on fundamental fairness and due process, I also find that the provisions of the Louisiana Children's Code which deny juvenile offenders the right to trial by jury violate the Equal Protection Clause of the United States and Louisiana Constitutions.[11]
Equal protection of the laws requires that, upon his request, a juvenile is entitled to receive the same mode of jury trial which is available to an adult charged with the same offense. Significantly, under the Habitual Offender Law, an adult defendant charged with a violent crime faces possible future enhancement of sentence but has the benefit of a jury trial, while a juvenile faced with these same possibilities is given less protection. What is the state's interest in this regard? The differential treatment of juveniles and adults cannot be justified on the theory that the denial of the jury trial to juveniles is essential to the preservation of the rehabilitative characteristics of the juvenile system. Nor can it be justified on the basis of the expedient nature of juvenile proceedings. As stated above, these characteristics of the juvenile systems have been eroded by our legislature and jurisprudential rulings.
Accordingly, I would affirm the trial court's granting of defendant's motion for jury trial and declaring La.Ch.C. art. 808 unconstitutional in that it is in derogation of a juvenile offender's due process and equal protection rights.
NOTES
[1] We note that the juvenile court erroneously stated in its judgment that the juveniles "were charged by bill of information."
[2] In its original judgment granting the juveniles' motion, the court described the incident that led to the state's charges as follows:

On September 26, 2000, a shooting occurred on the schoolyard of Carter G. Woodson Middle School (hereinafter "Woodson") in New Orleans where two (2) of its students, [D.J.], age thirteen (13), and [W.P.], age fifteen (15), were seriously injured after receiving gun shot wounds. It is alleged by the State that another student of Woodson, [A.A.], age thirteen (13), passed the .38 caliber handgun that was used in the shooting to [D.J.]through the schoolyard's fence. Moreover, after shots were fired by [D.J.], [W.P.] grabbed the gun and fired back. Although [A.A.] was not injured in the shooting, [W.P.] lost his kidney and spleen and [D.J.] was left partially paralyzed due to an injury to his spine and remains wheelchair bound.
[3] In addition to separate briefs filed by both attorneys for the charged juveniles, the following parties jointly filed an amicus brief, urging the Court to affirm the ruling of the juvenile court: (1) Juvenile Law Center; (2) Children & Family Justice Center; (3) Children's Law Center, Inc.; (4) Louisiana Association of Criminal Defense Lawyers; (5) National Association of Criminal Defense Lawyers; (6) National Center for Youth Law; (7) The Sentencing Project; (8) Southern Center for Human Rights; (9) University of the District of Columbia Juvenile Law Clinic; and (10) Youth Law Center.
[4] "In 1899, Illinois passed the Juvenile Court Act, founding a juvenile system widely acknowledged at the time as the model for other states to follow. And follow they did; within twenty years all but three states had similar juvenile justice systems in place." Ainsworth, Re-Imagining Childhood, supra, at 1096.
[5] Those crimes of violence enumerated in R.S. 15:529.1(A)(2) are attempted first degree murder, attempted second degree murder, manslaughter, armed robbery, forcible rape, simple rape, second degree kidnapping, a second or subsequent aggravated battery, a second or subsequent aggravated burglary and a second or subsequent offense of burglary of an inhabited dwelling.
[6] In United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court prohibited the use of prior convictions that were entered without the advice of counsel to enhance later sentences. In a related vein, some commentators suggest that the practice of using juvenile convictions obtained without the option to be tried by a jury to enhance adult sentences renders the juvenile system unconstitutional. See e.g., Sara E. Kropf, Note, Overturning McKeiver v. Pennsylvania: The Unconstitutionality of Using Prior Convictions to Enhance Adult Sentences Under the Sentencing Guidelines, 87 Geo. L.J. 2149 (1999); David Dormont, Note, For the Good of the Adult: An Examination of the Constitutionality of Using Prior Juvenile Adjudications to Enhance Adult Sentences, 75 Minn. L.Rev. 1769, 1793-94 (1991).
[7] See Alaska Stat. § 47.10.070 (1991); Colo. Rev.Stat. § 19-2-501 (Supp.1983); Mass. Gen Laws Ann. ch. 119, § 55A (West 1993); Mich. Comp. Laws Ann. § 712A. 17(2) (West 1993); Miss.Code Ann. § 43-23-15 (1993); Mont.Code Ann. § 41-5-521(7) (1991); N.M. Stat. Ann. § 32-1-31A (Michie 1988); Okla. Stat. Ann. tit. 10, § 1110 (West 1987); Tex. Fam.Code Ann. § 54.03(c) (West Supp.1995); W. Va.Code § 49-5-6 (1992); Wisc. Stat. Ann. § 48.31(2) (West 1987); Wyo. Stat. § 14-6-223(c) (1994); Ill.Ann.Stat. ch. 37, para. 803-35 (Smith Hurd 1992); Kan Stat. Ann. § 38-1656 (1986); S.D. Codified Laws Ann. § 26-8-31 (1984); Va.Code Ann. § 16.1-272 (Michie 1988).
[8] Justice Dennis, joined by Justices Dixon and Calogero, dissented on the issue of denial of jury trials in the Dino case, relying upon Art. I, § 3 of the State Constitution which prohibits unreasonable discrimination on the basis of age. 359 So.2d at 602-603.
[9] The disparity between the penalties meted out to the adult and juvenile offender apparently reflects the widely-held belief that juveniles who commit crimes are less culpable than their adult counterparts. In Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), the Supreme Court held that Eighth Amendment bars execution of a person who was under the age of 16 at the time of the offense and noted that:

Inexperience, less education and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult. Id., 108 S.Ct. at 2699.
[10] Juveniles can be tried as adults in criminal court in certain limited instances, but because these cases are not "juvenile court proceedings" or "juvenile adjudication hearings," the prohibitions against juries found in La. Ch. C. arts. 802 and 882 are not applicable. For example, La. Ch. C. art. 305(A) operates to subject any 15-year-old charged with first degree murder, second degree murder, aggravated rape or aggravated kidnapping to a mandatory trial-as-an-adult and a mandatory penalty of life imprisonment without benefit of parole if convicted. Under La. Ch. C. art. 305(B), when a juvenile 15 years of age or older has allegedly committed certain other enumerated felonies, the district attorney, in his discretion, may either file a petition in the juvenile court, or obtain an indictment or file a bill of information in criminal court. Finally, in cases where a delinquency petition has been filed against a juvenile aged 14 or older who is not otherwise subject to criminal court jurisdiction, alleging that he committed one or more certain enumerated offenses, the juvenile may be transferred to an adult criminal court and tried as an adult, if, after a transfer hearing, the state proves, among other things, that there is no substantial opportunity for the child's rehabilitation. La. Ch. C. arts. 857-864. However, a 14 year old who is transferred under art. 857 and subsequently convicted may not be confined past his 31st birthday. La. Ch. C. art. 857(B). La. Ch. C. art. 303(1) provides that a court exercising juvenile jurisdiction does not have jurisdiction over children subject to criminal court jurisdiction pursuant to La. Ch. C. art. 305, et seq., or transferred to criminal court pursuant to La. Ch. C. art. 857, et seq.
[1] Although the trial court's judgment declared only La.Ch.C. article 808 unconstitutional, it is clear that the intent was to find all articles which deny juveniles the right to jury trial unconstitutional, including La.Ch.C. art. 882.
[2] Dino followed the plurality holding of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), and held that "[f]or reasons similar to those expressed in McKeiver, a majority of this Court has concluded that the Louisiana due process guaranty ... does not afford a juvenile the right to a jury trial during the adjudication of a charge of delinquency based upon acts that would constitute a crime if engaged in by an adult." Dino, 359 So.2d at 598.
[3] Justice Blackmun announced the judgments of the Court and delivered an opinion in which Burger, C.J., and Stewart and White, JJ., joined. White, J. filed a concurring opinion. Brennan, J. filed an opinion concurring in the judgment in No. 322 and dissenting in No. 128. Harlan, J. filed an opinion concurring in the judgments. Douglas, J., filed a dissenting opinion, in which Black and Marshall, JJ., joined.
[4] Those crimes of violence enumerated in R.S. 15:529.1(A)(2) are attempted first degree murder, attempted second degree murder, manslaughter, armed robbery, forcible rape, simple rape, second degree kidnapping, a second or subsequent aggravated battery, a second or subsequent aggravated burglary and a second or subsequent offense of burglary of an inhabited dwelling.
[5] In United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court prohibited the use of prior convictions that were entered without the advice of counsel to enhance later sentences. In a related vein, some commentators suggest that the practice of using juvenile convictions obtained without the option to be tried by a jury to enhance adult sentences renders the juvenile system unconstitutional. See e.g., Sara E. Kropf, Note, Overturning McKeiver v. Pennsylvania: The Unconstitutionality of Using Prior Convictions to Enhance Adult Sentences Under the Sentencing Guidelines, 87 Geo. L.J. 2149 (1999); David Dormont, Note, For the Good of the Adult: An Examination of the Constitutionality of Using Prior Juvenile Adjudications to Enhance Adult Sentences, 75 Minn. L.Rev. 1769, 1793-94 (1991).
[6] Butterfield's articles paint a less than flattering picture of Louisiana's juvenile courts, noting that the system is "considered by many lawyers and children's rights advocates to be the most troubled juvenile court system in the country." Fox Butterfield, Few Options or Safeguards In a City's Juvenile Courts, N.Y. Times, July 22, 1997, at Al. The article also recounts one juvenile judge's practice of announcing the verdict before trial. Id. In addition, Butterfield writes that the rate of conviction in the New Orleans juvenile court "has remained steady at about 80 percent of all cases each year," where "[b]y comparison, the national average is only 33 percent." Id.
[7] See Alaska Stat. § 47.10.070 (1991); Colo. Rev.Stat. § 19-2-501 (Supp.1983); Mass Gen Laws Ann. ch. 119, § 55A (West 1993); Mich Comp. Laws Ann. § 712A. 17(2) (West 1993); Miss.Code Ann. § 43-23-15 (1993); Mont. Code Ann. § 41-5-521(7) (1991); N.M. Stat. Ann. § 32-1-31A (Michie 1988); Okla. Stat. Ann. tit. 10, § 1110 (West 1987); Tex. Fam. Code Ann. § 54.03(c) (West Supp.1995); W. Va.Code § 49-5-6 (1992); Wisc. Stat. Ann. § 48.31(2) (West 1987); Wyo. Stat. § 14-6-223(c) (1994); Ill.Ann.Stat. ch. 37, para. 803-35 (Smith Hurd 1992); Kan Stat. Ann. § 38-1656 (1986); S.D. Codified Laws Ann. § 26-8-31 (1984); Va.Code Ann. § 16.1-272 (Michie 1988).
[8] Act 1063 (House Bill 1253), effective July 14, 1997; LSA-RS 15:902.1.
[9] In Re Gault, supra.
[10] State in Interest of Dino, 359 So.2d 586 (dissenting opinion) citing State v. Melanson, 259 So.2d 609 (La.App. 4th Cir.1972)
[11] La. Const., 1974, Art. I § 3,