959 So.2d 543 (2007)
STATE of Louisiana In the Interest of D.J.
No. 2006-CA-1491.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 2007.
*544 Eddie J. Jordan, Jr., District Attorney, Josie N. Wicks, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Candace Chambliss, Orleans Public Defender, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, and Judge DAVID S. GORBATY).
CHARLES R. JONES, Judge.
The Appellant, D.J., seeks a reversal of the juvenile court's judgment which rendered him a juvenile delinquent.
On June 24, 2006, D.J.,[1] was arrested and charged with the following violations: simple burglary (La. R.S. 14:62); possession of marijuana [La. R.S. 40:966(E)(1)]; and possession crack cocaine, a Schedule II controlled dangerous substance (La. R.S. 40:967(C)(2)). A petition was filed by the Orleans Parish District Attorney's Office charging D.J. with the same on June 26, 2006.
On the same date, D.J. appeared in section "B" of juvenile court for a Continued Custody hearing to determine probable cause. At that hearing, probable cause was found on the possession of crack cocaine charge, but no probable cause was found on the possession of marijuana charge and D.J. was released to the custody of his mother. The State subsequently dismissed the drug-related charges and converted the simple burglary charge to a charge of possession of stolen things (La. R.S. 14:69). The case was re-allotted to section "C" of the juvenile court.
At the initial hearing in section "C," D.J.'s counsel determined that D.J. was not able to assist with his defense and raised the issue of D.J.'s capacity to proceed. D.J.'s counsel submitted a written Motion to Raise Mental Incapacity to Proceed on July 13, 2006. The juvenile court ordered Family in Need of Services (FINS) to provide a free psychological evaluation for the family in order to determine reasonable grounds to doubt D.J.'s mental capacity to proceed. Trial was set for August 17, 2006.
On August 15, 2006, D.J.'s counsel filed a writ with this Court in response to the juvenile court's failure to appoint a sanity commission. The writ was denied.
*545 On August 17, 2006, the matter came to trial. On the same date, the report from FINS was available; however, it did not address D.J.'s capacity, rather, the report indicated in part that D.J. was mentally retarded and that he was the mental age equivalent between three and nine years old.
On the same date, D.J.'s counsel orally requested that the court appoint a sanity commission to evaluate D.J. However, the court determined that it found no reasonable grounds to appoint a sanity commission. D.J.'s counsel then orally motioned the court to appoint an independent doctor to conduct a psychological evaluation. The court reset the matter for hearing for September 12, 2006, pending the outcome of D.J.'s independent psychological evaluation.
On September 12, 2006, the independent psychologist reported findings consistent with capacity to proceed. At that time, D.J.'s counsel requested a contradictory hearing to determine his capacity to proceed. The court, however, reiterated its earlier determination that there were no reasonable grounds to doubt D.J.'s capacity to proceed to trial in the matter.
During the trial, Ms. Mendel, a witness in this matter testified that she observed D.J. in the yard next door to her home going through purses. She contacted the police and reported the incident.
Ms. Amelia Martinez, the victim in this case, testified that on June 24, 2006, she was the victim of a crime and her purse was stolen from her vehicle. She also testified that her cash and her business debit card were missing from her purse after it was returned to her.
Officer Patrick Mangus testified that he became involved with the investigation and arrest of D.J. when he received a call from a dispatcher to investigate a suspicious subject who was possibly going to steal her purse. Officer Mangus observed D.J., who matched the description of the person of interest, discard a purse and run at a fast rate of speed. D.J. was apprehended and after Officer Mangus conducted a search incident to an arrest, he retrieved a credit card in the name of the victim, Amelia Martinez, and a roll of quarters belonging to the victim on D.J.'s person. Officer Mangus brought D.J. back to the scene of the crime at which time he was identified by Ms. Mendel, the witness in the matter. Additionally, when he was was brought to the Juvenile Bureau, $1000.00 was found on D.J.'s person.
At the conclusion of the trial, D.J. was found guilty and received a delinquent adjudication for the offense of possession of stolen things (La. R.S. 14:69). The disposition date was set for October 10, 2006.
On the same date, D.J.'s counsel submitted a Motion to Implement Dispositional Plan, thereby requesting that D.J. not be detained. D.J. was committed to the Office of Youth Development for a period of time not to exceed three years, and all but 18 months were suspended.
On October 12, 2006, counsel filed a motion and notice of appeal, which was granted.
In the present appeal, D.J. raises four assignments of error, enumerated as follows:
1. Whether the juvenile court had reasonable grounds to appoint a sanity commission when D.J. raised the issue of mental incapacity?
2. Whether the juvenile court violated D.J.'s rights by failing to appoint a sanity commission when he raised the issue of mental incapacity?
3. Whether the juvenile court violated D.J.'s rights by failing to conduct a contradictory hearing when he *546 raised the issue of mental incapacity?
4. Whether the juvenile court violated D.J.'s rights when it proceeded to trial after he raised the issue of mental incapacity?

DISCUSSION
"A reviewing court may not set aside a district court's finding of fact in the absence of manifest error or unless it is clearly wrong." Hanks v. Entergy Corp., 2006-477, p. 22 (La.12/18/06) 944 So.2d 564, 580, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La. 1993). Additionally, "[i]n order to reverse a district court's determination of a fact, a reviewing court must review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine [that] the record establishes the factfinder is clearly wrong or manifestly erroneous". Hanks, Id., citing Bonin v. Ferrellgas, Inc., 03-3024 at p. 6-7, 877 So.2d at 94-95.
In his first assignment of error, D.J. asserts that the juvenile court had reasonable grounds to appoint a sanity commission when D.J. raised the issue of mental incapacity. D.J.'s counsel believed that he would be unable to assist in his defense. At the time D.J.'s incapacity to proceed was raised, the court appointed FINS to conduct an evaluation of D.J. However, D.J. asserts that the appointment of FINS did not fulfill the requirements of the Louisiana Children's Code.
To support his contention that the juvenile court erred, D.J. cites State in the Interest of Causey, 363 So.2d 472 (La. 1978). In Causey, the district court denied Causey's motion to plead not guilty by reason of insanity in district court proceedings. Causey's application for writ of certiorari was granted. The Supreme Court held that: (1) the right not to be tried while incompetent to assist in one's own defense is a fundamental due process right, Id. at 476; (2) the right to plead insanity, absent some other effective means of distinguishing mental illness for moral culpability, is also fundamental, Id.; (3) there is no compelling reason to deny such rights to juveniles charged with conduct that would be serious crimes if committed by adults, Id.; and (4) there were facts in record to put the district court on notice that a juvenile might be mentally retarded or insane and, thus, to require court to give district right to plead not guilty by reason of insanity and right to a more thorough mental examination, followed by a contradictory hearing, Id. The case was reversed and remanded.
La. Children's Code art. 833 provides in pertinent part, that "[t]he court shall order a mental examination of the child when it has reasonable grounds to doubt the mental capacity of the child to proceed." (emphasis ours) A child's mental incapacity to proceed may be raised at any time by the child, the district attorney, or the court. La. Ch.Code art. 832. When the question of the child's mental incapacity to proceed is raised, there shall be no further steps in the delinquency proceeding, except the filing of a delinquency petition, until counsel is appointed and notified in accordance with Article 809(B) and the child is found to have the mental capacity to proceed. Id.
D.J. asserts that since the FINS psychological evaluation revealed that his Intelligence Quotient (I.Q.) is a 69, that such a low number constitutes reasonable grounds to appoint a sanity commission. Additionally, he asserts that the report assessed him with a mental age equivalent between three and nine years of age. He contends that such findings are warnings *547 of the capacity requiring the juvenile court to appoint a sanity commission.
The State disagrees with D.J. and argues that D.J. does in fact have the mental capacity to proceed. "Mental incapacity to proceed exists when, as a result of mental disease or defect, the defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La.C.Cr.P. art. 641. In support of its position that D.J. possessed the mental capacity to proceed, the State cites State v. Weber, 364 So.2d 952 (La.1978). In Weber, the Supreme Court held that "[t]he defendant carries the burden of establishing by a clear preponderance of the evidence that he lacks the capacity to understand the object, nature, and consequences of the proceedings against him, in a rational as well as factual manner, to consult with counsel in a meaningful way, and to assist rationally in his defense." Id. at 957, citing State v. Bennett, 345 So.2d 1129 (La.1977); State v. Morris, 340 So.2d 195 (La.1976); State v. Veal, 326 So.2d 329 (La.1976). Additionally, "[a] judge's determination of [a] defendant's present mental capacity is entitled to great weight on appeal." Weber, 364 So.2d at 957, citing State v. Morris, supra; State v. Flores, 315 So.2d 772 (La.1975).
In the instant case, D.J. filed a Motion to Raise Mental Incapacity to Proceed on July 13, 2006, and notified the juvenile court at a pretrial hearing of same. The juvenile court, in its effort to determine whether reasonable grounds existed to doubt D.J.'s capacity to proceed, ordered FINS to provide a free psychological exam for the family. The juvenile court employed Katie Brasted, M.A., Q.M.R.P.,[2] to conduct an examination. The psychological evaluation was conducted at the Office for Citizens with Developmental Disabilities on August 1, 2006.
The psychological evaluation revealed that D.J. worries about the current charges against him and the possibility of serving time. The report also revealed that D.J. was aware of the offenses with which he was charged. D.J. also demonstrated that he understood the rules of probation and had the ability to recall the facts pertaining to his actions and whereabouts at the time of the alleged offense. D.J. also demonstrated that he also had the ability to alert his attorneys to potential witnesses.
Based on the above psychological evaluation report, the juvenile court determined that D.J. suffered from behavioral problems, rather than mental issues. The court even allowed D.J.'s counsel to conduct an independent evaluation and the matter was reset for hearing pending the outcome of the independent psychological evaluation.
However, at the September 12, 2006 hearing, the independent psychological evaluation by Dr. Delilah Bauer, a specialist in Child and Adolescent Psychology[3] did not reveal findings sufficient to question D.J.'s mental capacity. The evaluation reads in pertinent part:

ABILITY TO ASSIST IN His (sic) DEFENSE
[D.J.] had the ability to recall and relate facts pertaining to his action and whereabouts at the time of the alleged offense and could discuss his ability to alert his attorney to potential witnesses.
[D.J.] had the ability to maintain a consistent defense and inform his attorney of any distortions or misstatements of others.

*548 [D.J.] had a very limited capacity to make decisions in response to well explained alternatives. Initially he did not know what a plea bargain was, but with education was able to grasp the concept and could discuss it. Despite this, he did not appear to be able to generalize what he learned about plea bargains in his own case.
[D.J.] had the capacity to testify relevantly, but did not appreciate his right to refuse to testify. He also initially failed to appreciate the adversarial nature of the trial and did not perceive any difference in answering questions posed to him by the prosecution or defense.
At the time of the evaluation, [D.J.] denied that he would have any difficulty tolerating the stress of trial; however, he does appear to be growing more distressed as a result of the extreme amount of solitary time during his confinement . . .
* * *
CONCLUSIONS
. . . [D.J.] had a basic understanding of much of his legal rights. He knew that his lawyer was there to help him and that the prosecution was invested in finding him guilty; however, he had limited understanding of his rights to avoid self-incrimination and his rights to a fair trial. As the session progressed it was clear that he had the capacity to learn these rights.
In summary, [D.J.]'s limited intellectual abilities, depression, and limited appreciation of his rights may impact his ability to have a rational understanding of his legal situation, but with education could learn to appreciate his situation and work more effectively with counsel.
Hence, D.J. failed to introduce any evidence which suggested that he was not able to understand the nature of the proceedings against him. Therefore, based on our review of the record in this matter, we find that the juvenile court did not err in finding that the presumption of sanity was unrebutted and that there were no reasonable grounds for the court to question D.J.'s capacity to stand trial. Thus, we find that this assignment of error does not have merit.
In his second assignment of error, D.J. argues that the juvenile court violated his rights by failing to appoint a sanity commission when he raised the issue of mental incapacity. La. Ch.Code art. 833 provides that "[t]he court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed." As discussed above, the juvenile court did not find reasonable grounds to appoint a sanity commission. Instead, it ordered an evaluation of D.J. which revealed that D.J. possessed the requisite mental capacity to stand trial. "A defendant does not have an absolute right to the appointment of a sanity commission simply upon request." State v. Volson, 352 So.2d 1293 (La.1977). "A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed." State ex rel. Seals v. State, 2000-2738, p. 5. (La.10/25/02), 831 So.2d 828, 832. Thus, we find that this assignment of error is also without merit.
In his third and fourth assignments of error, D.J. argues that the juvenile court violated his rights by failing to conduct a contradictory hearing when he raised the issue of mental incapacity, and that the juvenile court also violated his rights when it proceeded to trial after he raised the issue of mental incapacity.
In our above discussion, we determined that the juvenile court did not have reasonable *549 grounds to doubt D.J.'s mental capacity to stand trial, even after D.J. underwent an independent psychological evaluation. Our review of the record indicates that a Competency Hearing was scheduled in this matter on August 17, 2006. On this date, the court determined that there were no reasonable grounds to doubt D.J.'s mental capacity to proceed to trial. As we discussed above, the court even allowed D.J.'s counsel to conduct an independent evaluation to determine his mental capacity. However, at a subsequent hearing, the independent psychological evaluation did not reveal findings sufficient to call the D.J.'s mental capacity into question. Therefore, based upon our review of the record in this matter, we find that the juvenile court did not err in finding that D.J. was mentally competent to stand trial. Thus, we find that D.J.'s third and fourth assignments of error are without merit.

DECREE
For the reasons stated herein, we affirm the adjudication and sentence of the juvenile court.
AFFIRMED.
NOTES
[1] D.J. is a juvenile defendant. In order to protect his right to confidentiality and privacy, he will be identified solely by his initials.
[2] Qualified Mental Retardation Professional.
[3] Dr. Bauer is also a forensic psychologist and a specialist in custody evaluations.