NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-27

DESHAWN DAMIEN SHAW

VERSUS

LIVE OAKS TOWNE HOMES ASSOCIATION, INC.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20161151
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery,
Judges.

AFFIRMED.

**John Stafford Irion, Jr.**
**Attorney at Law**
**Post Office Box 3412**
**Lafayette, Louisiana  70502**
**(337) 233-0505**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Deshawn Damien Shaw**

**Lawrence Edward Marino**
**Patrick Bayard McIntire**
**Oats & Marino, P.P.C.**
**100 East Vermilion Street**
**Suite 400**
**Lafayette, Louisiana  70501**
**(337) 233-1100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Live Oaks Towne Homes Association, Inc.**

**CONERY, Judge.**

Plaintiff-Appellant Deshawn Damien Shaw filed suit seeking to enjoin Live Oaks Towne Homes Association, Inc. (the Association) from assigning parking spaces in the common area of the Live Oaks Towne Homes Development (the Development).[1] The Association reconvened, seeking to enjoin Mr. Shaw from parking in violation of the Association's parking rules. The trial court granted summary judgment in favor of the Association, finding no genuine issue of material fact that the Association had the authority to assign parking spaces in the common area of the Development. The trial court further granted the Association's reconventional demand enjoining Mr. Shaw from continuing to violate the Association's parking rules. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The town home development at issue was designed and recorded on January 7, 1983, under entry number 83-862 in the conveyance records of the Clerk of Court of Lafayette Parish. The map of the Development indicates the proposed construction of both Phase I and Phase II, which includes a total of twenty-nine lots. The "LEGEND" provides that the "UNITS" are designated with diagonal lines and the "PATIOS" are designated with dots and referred to as "limited common area." Under the heading entitled "NOTES" under number ten, the "LEGEND" states, "ALL AREAS NOT DESIGNATED AS A UNIT OR PATIO IS COMMON AREA TO THE SUBDIVISION." The map also shows lines which appear to be parking spaces for the Development but are not specifically designated as such on the Legend.

---

[1] Mr. Shaw's petition also included a claim for the cost or value of improvements he allegedly made to a carport in the common area. This claim was not briefed to the trial court or to this court on appeal. Therefore, Mr. Shaw's claim for reimbursement for the cost or value of the alleged improvements cannot be considered by this court on appeal. Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(4).

On April 7, 1983, the Developers filed an "Amended and Restated Declaration of Servitudes, Conditions and Restrictions of Live Oaks Towne Homes," (the Declaration) dated March 24, 1983. The Declaration was amended and recorded on June 17, 1996. However, the original restrictions pertinent to this litigation were not changed other than to replace Article XIII, Paragraph 7 with the following language, "[T]his Declaration may be amended as provided in the By-Laws of the Association."

Article II of the Declaration, "SCOPE OF THE DECLARATION," Section 3, entitled, "OWNER'S RIGHTS SUBJECT TO THE PROVISIONS OF THIS DECLARATION," provides, "[E]ach owner shall own his Unit and improvements thereon for use as such Owner's primary single family residence, and shall have full and complete dominion thereof subject to the provisions of this Declaration."

Article III of the Declaration, "PROPERTY RIGHTS AND SERVITUDES," Section 1, entitled, "RIGHT OF USE," provides, "[E]very owner shall have a **nonexclusive** servitude upon, over and across all streets, drives, pedestrian walkways, and all Common Areas, with the exception of Limited Common Areas, for access to and enjoyment of such Owner's Unit." (Emphasis added).

Article IV of the Declaration, "USE AND OTHER RESTRICTIONS," Section 15, entitled, "RULES," states, "[E]very owner, his guests, members of his family, servants, employees, invites, lessees and licensees shall strictly adhere to the Rules."

Article VI of the Declaration, entitled, "THE ASSOCIATION," Section 1 (emphasis added), states:

> Declarant (Developer) has caused to be incorporated as a non-profit corporation, the Live Oaks Towne Homes Association, Inc.; said Association is to be the manager of the Property herein known as the Live Oaks Towne Homes. Any purchaser of any of the Units **shall** be deemed to have assented to such designation and management, and

ratified and approved same. The Association, by its signature approving this Declaration, has agreed to perform the duties required of it hereunder. The Association and the Board thereof shall have the following duties, rights and powers.

In Article I of the Declaration entitled "DEFINITIONS," "Association" is defined as the "Live Oaks Towne Homes Association Inc., a Louisiana Corporation," and "Common Area(s)" is defined as "the Property, less and except the Units, including all Limited Common Areas," which have been identified as the "PATIOS" attached to some of the Units.

Article VI of the Declaration further defines the specific "DUTIES AND RESPONSIBILITIES OF LIVE OAKS TOWN[E] HOMES ASSOCIATION, INC," which include in pertinent part the following, "(a) To adopt Rules in accordance with the By-Laws of the Association for the regulation and operation of the Property" and "(f) To enjoin or seek damages from the Owners for violations of the covenants or for violation of the rules."

Attached to the end of the Declaration is a document also dated March 24, 1983, described as an "EXTRACT OF RESOLUTION OF LEBLANC-MANCINI INVESTMENTS, INC," in which the Developers:

> Resolved, that Samuel C. LeBlanc, Jr., President of this Corporation, be and is hereby authorized, empowered and directed by and on behalf of this Corporation in its capacity as a general partner of Live Oaks Towne Homes Development-1980, a Louisiana general partnership, ("Live Oaks"), to execute and deliver the following:
>
> (a) An Act of Transfer pursuant to which Live Oaks shall convey all of its right, title and interest in and to the Common Areas of Live Oaks Towne Homes, Lafayette Parish, Lafayette unto Live Oaks Towne Home Association, Inc., said Common Areas being more fully described in the Declaration of Servitudes, Conditions and Restrictions of Live Oak Towne Homes, as amended; and
>
> (b) An Amended and Restated Declaration of Servitudes, Conditions and Restrictions of Live Oaks Towne Homes pursuant to which Live

Oaks shall amend the terms of the said Declaration of Servitudes, conditions and Restrictions as set forth therein.

Therefore, as of the April 7, 1983 filing and recordation of the Declaration and the Extract dated March 24, 1983, all authority to control the Development, specifically including the "Common Areas" previously defined as any part of the property not contained within the Units or the "Limited Common Areas" (i.e. the patios), was delegated exclusively by the Developers to the Association.

On June 16, 2008, the Association, in response to continued confusion over the parking situation at the Development, devised and assigned a parking plan, which was adopted at the Association's annual meeting of the homeowners. Thus, as of June 17, 2008, the 2008 Parking Area Map became a Rule of the Association for the regulation and operation of the Property, which was binding on all unit owners. At the June 23, 2009, annual meeting of the Association, the membership unanimously voted to approve Rule 16, in order to enforce and protect the parking space assignments set forth in the 2008 Parking Area Map which stated, "No vehicles shall be parked in the Association premises in such a manner as to block any member from accessing their parking spot or to block their ingress from their parking spot. Any vehicle parked in violation of this rule may be towed immediately."[2] Rule 16 was also ratified by the Association membership at its annual meeting in 2010.

---

[2] After some confusion by the trial court that resulted in the denial of the original summary judgment filed by the Association, a special meeting was held in 2016, where the Association confirmed that the Parking Rules had been passed by the membership of the Association in 2008 and 2009. The Association also ratified both Rules, re-passed both Rules, and amended the 2008 Minutes to correct the omission of the vote and passage of the current parking plan as a Rule at the 2008 meeting of the Association.

4

*The 2008 Parking Rules*

On November 2, 2012, Mr. Shaw purchased Unit 555 of the Development via a "CASH SALE WITHOUT WARRANTY" from the Deutsche Bank, National Trust Company located in Coppell, Texas. The property description lists "Unit 3 and Parcels 3-A & 3-B" as purportedly "described on that certain plat of survey prepared by R. Douglas McGee & Associates, Ltd., last revised January 7, 1983 and recorded under Entry No. 83-862 of the records of Lafayette Parish, Louisiana."

However, the plat referenced in Mr. Shaw's document only shows Unit 3 and makes no reference to Parcels 3-A & 3-B. Further, the property was sold "as is" with no warranties and relieved the seller for all claims that could arise under Louisiana's redhibition articles, found in La.Civ.Code arts. 2520, et seq. Additionally, Mr. Shaw's cash sale document states, "Seller makes no representations or warranties, of any kind or nature whatsoever, whether expressed or implied by law, or otherwise, concerning the condition of the title of the property."

At the time Mr. Shaw purchased Unit 3, known as Unit 555, the 2008 Parking Rules had been in effect for over four years. Under the terms of the 2008 Parking Rules, Ms. Tressie Cox, who owned Unit 555 in 2008, was assigned two parking spaces. The first was in the common area immediately adjacent to her unit. The second parking space was also in the common area, but across an internal Association driveway from Unit 555 where several other units' second parking spaces are located.

As previously indicated, some of the units have internal garage parking spaces, which are considered part of the owners' Unit. The 2008 Parking Plan provided each unit owner without an internal garage, such as Ms. Cox and Mr. Shaw, one

parking space located near his unit, and one parking space in another common area of the Development. Those owners with an internal garage were also assigned one parking space near their Unit.

This was the case with Unit 553, also known as Unit 4, owned by Ms. Susan Theall. Ms. Theall was assigned two spaces under the 2008 Parking Plan. The first was the internal garage space of Unit 553, and the second was in the common area between Unit 553 and Unit 555. It is this parking space that is the subject of this lawsuit. When the Association assigned the parking space to Unit 553 in 2008, it required Ms. Theall to replace the cover to the awning over that space, which she attests to in her affidavit that was submitted in support of the Association's re-urged motion for summary judgment.

Mr. Shaw began parking in the parking space assigned to Ms. Theall and demanded that she relinquish the parking space to him. Ms. Theall refused, citing the 2008 Parking Rules, which provided that each resident should have one parking space located in the common area that was near their unit. This dispute ultimately resulted in Mr. Shaw filing suit on March 3, 2016, for a declaratory judgment concerning the parking space, followed by a reconventional demand by the Association for an injunction prohibiting Mr. Shaw from parking in the space in violation of the Association's Rules.

In the Fall of 2016, Mr. Shaw filed a motion for partial summary judgment seeking to prevent the Association from assigning and reassigning parking spaces in the common area of the Development. In response, the Association filed a competing motion for summary judgment seeking to deny Mr. Shaw's claims based on the Association's authority to assign or reassign parking spaces in the common area of the Development, to deny Mr. Shaw any costs associated with his alleged

6

improvements to the common area, and to permanently enjoin him from violating the Association's Parking Rules.

After hearing, the trial court denied both motions for summary judgment because of competing affidavits and possible confusion over the formalities required for the Association to properly vote on and adopt Rules, including the 2008 Parking Area Rule.

In the Fall of 2017, the Association once again re-urged its motion for summary judgment seeking the same relief from the trial court. Prior to the filing of the Association's motion for summary judgment, Mr. Shaw obtained new counsel who filed a supplemental petition. In the supplemental petition he alleged that based on his chain of title and other documents, he had obtained a servitude over the parking space at issue.

The trial court once again heard oral argument by counsel for the parties[3] and after a review of the briefs and authority cited, ruled in favor of the Association. In its October 17, 2017 judgment, the trial court granted the Association's re-urged motion for summary judgment, thereby dismissing all claims made by Mr. Shaw against the Association with prejudice and assessing Mr. Shaw with all costs. The trial court also granted the Association's reconventional demand for an injunction that permanently enjoined Mr. Shaw from violating the 2008 Parking Rules adopted by the Association. Mr. Shaw now timely appeals the trial court's judgment of October 17, 2017.

---

[3] The trial court denied Mr. Shaw's motion to include in the record of the Association's re-urged motion for summary judgment the briefing and documents submitted by Mr. Shaw in support of his first motion for partial summary judgment. Counsel for Mr. Shaw did not formally object to the trial court's ruling.

## ASSIGNMENT OF ERROR

Mr. Shaw assigns the following error on appeal:

1. The Trial Court erred by finding no genuine issue of material fact and granting the motion for summary judgment in favor of the Association, thereby dismissing the claims of [Mr.] Shaw with prejudice and granting injunctive relief requested by the Association.

## LAW AND DISCUSSION

### *Standard of Review*

An appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Insurance Company*, 06-363 (La. 11/29/06), 959 So.2d 544. This standard of review requires the appellate court to use the same criteria as the trial court in determining if summary judgment is appropriate, which is whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

"A fact is 'material' when its existence or nonexistence may be essential to [the] plaintiff's cause of action." *Smith v. Our Lady of the Lake Hosp. Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). As provided in La.Code Civ.P. art. 966(D)(1):

> [I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's

burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

### *Authority of the Association*

The trial court did not issue written reasons but stated at the end of the hearing on the Association's re-urged motion for summary judgment, "The Court has read the briefs and the authority cited within the briefs. The Court finds that there is no genuine issue of material fact." We agree.

The documentation submitted by the Association shows that the Association was granted the authority to provide the Rules and Regulations necessary to govern the Development by the Developers. It is undisputed that the 2008 Parking Plan was in force and effect when Mr. Shaw purchased Unit 555 in 2012. Therefore, under the terms of the Declaration recorded in 1983 and amended in 1996, he was bound to abide by the 2008 Parking Rules, instituted some four years prior to his purchase of Unit 555.

Mr. Shaw argues that his "Cash Sale Without Warranty" somehow creates a servitude over the parking place at issue. It is undisputed that the referenced plat, last revised January 7, 1983, and recorded under Entry No. 83-862 of the records of Lafayette Parish, Louisiana, shows only Unit 3 and makes no reference to Parcels 3-A & 3-B, one of which Mr. Shaw allegedly claims is the disputed parking space at issue. No mention of any parking spaces is made in the Legend of the plat, which clearly defines as common area all areas of the Development not designated as units or patios. As cited in the Extract of Resolution of Leblanc-Mancini Investments, Inc., the Developers delegated all authority over the common area to the Association,

which exercised its authority by creating the 2008 Parking Rules, a Rule enforcing the assigned parking spaces, and consequences for violating same.

As previously stated, Mr. Shaw's cash sale document states, "Seller[s] makes no representations or warranties, of any kind or nature whatsoever, whether expressed or implied by law, or otherwise, concerning the condition of the title of the property." When Mr. Shaw purchased the property in 2012 he should have been aware that he was bound by the Rules made by the Association Board, including the 2008 parking rules. As discussed in the Declaration, the Rules clearly provide "Any purchaser of any of the Units shall be deemed to have assented to such designation and management, and ratified and approved same." Further, the Rules provide, "[E]very Owner, his guests, members of his family, servants, employees, invites, lessees and licensees shall strictly adhere to the Rules."

Therefore, we find that the trial court correctly found that no genuine issue of material fact existed as to the authority of the Association to enforce the 2008 Parking Rules and to enjoin Mr. Shaw from violating the Association's Rules by parking in a parking space assigned to Unit 553 and not to his unit, Unit 555.

## CONCLUSION

For the foregoing reasons, the October 17, 2017 judgment of the trial court granting the motion for summary judgment of the Live Oaks Towne Homes Association, Inc., dismissing all claims made by Deshawn Damien Shaw with prejudice and at his cost, and permanently enjoining Deshawn Damien Shaw from violating the Parking Rules adopted by the Live Oaks Towne Homes Association is affirmed in its entirety. All costs of this appeal are assessed to Deshawn Damien Shaw.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform
Rules—Courts of Appeal. Rule 2-16.3.